UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TEDDYALBAN D.,[1]

                Plaintiff,

    v.

COMMISSIONER, Social Security
Administration,

                Defendant.

_____

Case No. 3:23-cv-01106-MK

**OPINION
AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Teddyalban D. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disabled widow's benefits under Title II of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 3. For the reasons below, the Commissioner's final decision is AFFIRMED.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disabled widow's benefits in September 2020, alleging an amended disability onset date of October 1, 2020. Tr. 68.[2] Her application was denied initially and upon reconsideration. Tr. 68–74, 76–80. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in August 2022. Tr. 36–37. On October 12, 2022, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 20–31. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–7. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 50 years old on her alleged onset date. Tr. 68. Plaintiff has at least a high school education and has past relevant work experience as a caregiver and deli clerk. Tr. 79–80. Plaintiff alleged disability based on several impairments, including neck and right shoulder problems, human immunodeficiency virus ("HIV"), neuropathy, and pain. Tr. 69.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her amended alleged onset date. Tr. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease with radiculopathy, bilateral neural foraminal and spinal canal stenosis, and L1-2 compression deformities. Tr. 23. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 24. The ALJ found that Plaintiff had an RFC to perform a full range of light work except:

> Plaintiff can stand and walk for a combined total of four hours and sit for six hours in an eight-hour workday. [She] can occasionally

> climb ramps and stairs, never climb ladders, ropes, or scaffolds,
> [and she can] occasionally balance, stoop, kneel, crouch and
> crawl[.] [She can] occasionally reach overhead and frequently
> reach in all other directions[.] [She] can frequently handle, finger,
> and feel[.] [She] can have occasional exposure to vibration and
> hazards.

Tr. 24. At step four, the ALJ found that "as [Plaintiff] can perform other jobs that exist in significant numbers in the national economy, a discussion of [Plaintiff's] past work is unnecessary." Tr. 30. At step five, the ALJ found, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy such that Plaintiff could sustain employment despite her impairments. *Id*. The ALJ thus found Plaintiff was not disabled under the Act. Tr. 31.

## DISCUSSION

Plaintiff asserts remand is warranted because the ALJ erred by formulating an RFC contrary to the record as a whole. Plaintiff argues that the ALJ formulated the RFC without explaining how Plaintiff was capable of performing work that requires frequent manipulative activities. Plaintiff asserts that in making this determination, the ALJ improperly evaluated Plaintiff' subjective symptom testimony and the medical opinion evidence, and the ALJ failed to adhere to SSR 96-8p.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . .

testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at \*1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at \*4.

At the administrative hearing, Plaintiff testified that her chronic neck and back pain limit her ability to seek employment. Tr. 41, 43–44, 46. When the ALJ asked if she was able to sit or stand as needed, Plaintiff explains that it depends on how she feels because if she sits for too long it causes pain, but also if she stands for too long it causes pain. Tr. 46. Plaintiff stated she must adjust and keep moving depending on how bad her pain is. *Id.* Plaintiff explained that she continues to work as a caregiver two days a week, but that her job is very flexible, as she can sit

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

or stand as needed and rearrange her schedule. Tr. 41, 46–47. In function reports from April 2021, Plaintiff indicated that she has difficulty with squatting, lifting, walking, bending, hearing, climbing stairs, following instructions, using her hands, concentrating, understanding, and completing tasks. Tr. 238, 255. Plaintiff also indicated that she can read, go to the beach, prepare simple meals, perform basic household chores, go outside alone "as much as she can," use public transportation, shop in stores, make jewelry and beaded artwork, and manage her personal care. Tr. 233–40, 250–57.

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that, while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 25. In making this finding, the ALJ discredited Plaintiff's subjective symptom testimony for the following reasons: (1) Plaintiff's impairments were not supported by objective medical evidence; (2) Plaintiff's impairments improved with treatment and Plaintiff failed to comply with treatment on multiple occasions; and (3) Plaintiff's activities of daily living were inconsistent with her alleged symptoms. Tr. 25–27. The court reviews the ALJ's reasons in turn.

### A.    Objective Medical Evidence

Plaintiff asserts that the ALJ failed to identify whether Plaintiff's "specific testimony was rejected, and advised that the RFC adequately addressed Plaintiff's subjective allegations." Pl.'s Br. 13 (ECF No. 16) (citing Tr. 25, 27, 29). Specifically, Plaintiff argues that the ALJ "cited examples of the record to minimize the severity of [Plaintiff's] impairments or suggest that Plaintiff's symptoms were not as severe as alleged." Pl.'s Br. 13. Conflict between the alleged severity of a claimant's symptom testimony and the medical evidence of record is a valid basis

for an ALJ to find the claimant's symptom testimony less than fully credible. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, *available at* 2016 WL 1119029 at *4.

The Commissioner asserts that the ALJ provided clear and convincing reasons for rejecting Plaintiff's allegations. Def.'s Br. 9 (ECF No. 18). The Commissioner explains that the ALJ acknowledged that Plaintiff's conditions are painful and chronic, but adequately accounted for them by restricting Plaintiff to a reduced range of light work. Def.'s Br. 9 (citing Tr. 24–27). The Commissioner argues that the ALJ referred to specific evidence in the medical record and provided several valid reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony. Def.'s Br. 9 (citing Tr. 25–27).

The ALJ determined that Plaintiff's reports of her symptoms and limitations are not consistent with multiple provider's treatment and examination findings. Tr. 25. The ALJ acknowledged that Plaintiff's initial physical therapy treatment records from December 2020 showed some hypermobility of the cervical spine, reduced strength in her upper extremities bilaterally, and poor postural stability of the neck. Tr. 26 (citing Tr. 569-72). However, the ALJ relied heavily on a spinal exam done in March 2022 by Micah Bates, PA-C at the OHSU Spine Center. Tr. 27 (citing Tr. 530-38). The ALJ discussed how Plaintiff demonstrated "no deficits on examination," and she had normal muscle tone in her upper and lower extremities, no rigidity, atrophy, or abnormal movements. *Id.* The ALJ explained that Plaintiff exhibited intact 5/5 motor strength throughout, intact sensation, intact symmetric reflexes, as well as other remarkably

normal findings. *Id.* The ALJ acknowledged that consistent with Plaintiff's spinal exam, in April 2022, Dr. Retondo found that although Plaintiff had some reduced range of motion and tenderness in her neck and back, Plaintiff demonstrated intact, 5/5 strength in her upper extremities. Tr. 27 (citing Tr. 436, 595). On this record, the ALJ cited clear and convincing objective medical evidence to support the rejection of Plaintiff's subjective symptom testimony,

### B.    Plaintiff's Treatment

An ALJ may discount a claimant's testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016). The ALJ discussed how Plaintiff suffered from a low back injury after falling off of a motorcycle while traveling in Tanzania in August 2021. Tr. 26. The ALJ acknowledged treatment notes showing that Plaintiff had some tenderness in her spine and paraspinal muscles as well as deficits in her range of motion. Tr. 26 (citing Tr. 351, 411, 544). However, the ALJ explained that Maria Kosmetatos, N.P. ordered a back brace in September of 2021. Tr. 26 (citing Tr. 417). The ALJ cited treatment notes from September 2021 to February 2022 indicating Plaintiff continues to wear the brace daily, is doing well in the brace, is able to walk steadily, and feels good and has no pain while wearing the brace. Tr. 26 (citing Tr. 417, 420–24, 426–30, 432–34, 600).

The ALJ also properly considered Plaintiff's non-compliance with medical treatment in discrediting her symptom testimony. Tr. 26. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). In this case, the ALJ pointed to evidence in the medical record showing that Plaintiff was initially given a physical therapy referral in October 2019. Tr. 331. In December 2019, NP

Kosmetatos noted that Plaintiff had still not started physical therapy. Tr. 332. In January 2020, NP Kosmetatos noted again that Plaintiff had still not started physical therapy, and she placed a new physical therapy referral. Tr. 338. Plaintiff had an initial physical therapy consultation in February 2020, but did not return to physical therapy until December 2020. Tr. 568, 582–87. The ALJ acknowledged that Plaintiff engaged in physical therapy from December 2020 to January 2021 and experienced temporary relief. Tr. 26 (citing Tr. 376–80, 513–19, 551–74). Her physical therapist Shilpa Joshi, PT noted that Plaintiff's symptoms were consistent with mechanical neck pain versus facet arthropathy, and she opined that Plaintiff had good rehabilitation potential if she complied with her home exercise program. Tr. 571–72. The ALJ cited many treatment notes where PT Joshi repeatedly stated that Plaintiff had not been doing her home exercise program and that she needed to comply better to see further improvements in her functioning. Tr. 26 (citing Tr. 553, 563, 559). The ALJ also discussed how in September 2021, NP Kosmetatos referred Plaintiff to a spine clinic for an evaluation for her neck and right arm radicular pain, but Plaintiff failed to appear at the scheduled evaluation. Tr. 27, 430, 600. Plaintiff did not reschedule with the spine clinic until March 4, 2022, nearly six months after she was referred to go. Tr. 27.

Noncompliance can justify discounting testimony. *See, e.g.*, *Molina* , 674 F.3d at 1112.  (discounting testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that impairments that "can be controlled effectively with medication are not disabling for the purpose of determining eligibility"). Plaintiff also failed to challenge the ALJ's assessment of Plaintiff's treatment, nor does she explain her reasons for failing to seek and comply with treatment. Accordingly, Plaintiff's

noncompliance with treatment and her improvement with treatment were clear and convincing reasons to reject her testimony.

### C.    Activities of Daily Living

The ALJ next rejected Plaintiff's subjective symptom testimony on the basis that her activities of daily living were inconsistent with her reports that her impairments significantly limited her daily activities. An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ discussed how Plaintiff can read, go to the beach, prepare simple meals, perform basic household chores, go outside alone "as much as she can"," use public transportation, shop in stores, make jewelry and bead artwork, and manage her personal care. Tr. 25 (citing Tr. 233–40, 250–57). The ALJ explained that "despite [Plaintiff's] impairments, she remains able to work two days (about sixteen hours) a week as a caregiver." Tr. 25. Plaintiff described her job duties as a caregiver, and explained that the person she cares for does not like to be "stuck in the house. . . ." so [Plaintiff] goes shopping and walks with her. Tr. 48. Plaintiff also stated that as a caregiver she cleans dishes and prepares meals. Tr. 45. The ALJ concluded that these activities of daily living suggest that she is capable of performing light work. Tr. 24.

The Ninth Circuit has explicitly held that ALJs may consider "any work activity, including part-time work," when determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Accordingly, the ALJ's rejection of Plaintiff's testimony that she was precluded from all work activity as inconsistent with her work history as a part-time caregiver was supported by substantial evidence.

In sum, the ALJ gave many clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

As noted, Plaintiff challenges the ALJ's assessment of the medical opinion evidence**.** Pl.'s Br. 9–13. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at \*5867–68 (Jan. 18, 2017).

Under the revised regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In crafting their disability determination decisions, the Ninth Circuit has instructed ALJs "to use these two terms of art—'consistent' and 'supported'—with precision." *Woods v. Kijakazi*, 32 F.4th 785, 793 n.4 (9th Cir. 2022)., even under the new regulations "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.[4] With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commr. of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasettie*, 533 F.3d at 1040; *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995).

/ / /

/ / /

/ / /

---

[4] The new regulations also remove ALJs obligation to make specific findings regarding relationship factors, which include: the relationship with claimant; length of treating relationship; frequency of examinations; purpose of the treatment relationship; the existence of a treatment relationship; examining relationship; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5); *Woods*, 32 F.4th at 792. However, a discussion of relationship factors may be appropriate where "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 32 F.4th at 792 (citation omitted).

A.    **Maria Kosmetatos, N.P.**

In October 2019, NP Kosmetatos wrote a letter on Plaintiff's behalf in which she stated that Plaintiff's cervical radiculopathy "prevents her from doing any physical repetitive work." Tr. 28 (citing Tr. 614).

The ALJ rejected NP Kosmetato's opinion because "it is conclusory, overly vague, and both inconsistent with the opinion of Dr. Davenport and unsupported by the evidence in the file particularly PA-C Bates' neurosurgical consultation exam findings, treatment and examination notes by multiple treatment providers such as Dr. Retondo and NP Kosmetatos herself, repeated radiological imaging of [Plaintiff's] spine, and physical therapy records highlighting [Plaintiff's] poor compliance with her home exercise plan as well as [Plaintiff's] statements regarding her activities of daily living and the pain relief she receives from medication, use of her back brace, and active engagement in physical therapy." Tr. 29 (citing Tr. 79, 233–40, 250–57, 526–29, 614, 343, 346, 348–52, 355, 357, 369, 371, 375–80, 384, 403, 406, 408, 411, 414, 417, 420–34, 436, 496, 498, 502, 504, 508–09, 511, 513–19, 521–22, 524, 530–38, 543–45, 549–574, 580, 588–89, 594–95, 600–01, 611).

Here, NP Kosmetato's opinion fails to specify what Plaintiff can still do despite her symptoms and does not include specific limitations which could be incorporated into an RFC assessment. Tr. 614. The Court agrees with the ALJ and finds NP Kosmetato's opinion regarding Plaintiff's inability to work failed to identify specific functional limitations and was, in essence, conclusory. Her opinion that Plaintiff is incapable of "any physical, repetitive work" is effectively a legal conclusion and "inherently neither valuable nor persuasive." Tr. 614, C. F. R. § 404.1520b(c). Such statements may be rejected by an ALJ because they are not diagnoses or descriptions of a claimant's functional capacity. *Valentine v. Comm'r Soc. Sec Admin.*, 574 F.3d

691, 692 (9th Cir. 2009). The ALJ, accordingly, was not required to give special weight to a vague, equivocal opinion on an issue reserved for the Commissioner. On this record, the ALJ reasonably rejected the limitations assessed by NP Kosmetato and provided legally sufficient reasons for doing so. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).

### B.    Dr. Retondo.

Dr. Retondo opined that Plaintiff should avoid walking, prolonged sitting, lifting, carrying, repetitive movements, prolonged grasping, prolonged standing, reaching overhead, and computer work. Tr. 526. She explained that Plaintiff could walk seven city blocks without increased symptoms or needing to rest, but that Plaintiff could sit or stand for less than two hours in an eight-hour workday. *Id.* Dr. Retondo opined that there was "no position that is comfortable" for Plaintiff, and that she "constantly changes position to avoid pain." Tr. 527. She opined that Plaintiff would need 20-30 minute breaks to rest and lie down at least every hour, in addition to a morning break, lunch period, and afternoon break. *Id.* She opined that Plaintiff could not bend at the waist, crawl, squat, climb, twist, crouch, or stoop. *Id.* As far as manipulative limitations, she opined that Plaintiff cannot repetitively grasp, push, or pull with her hands, operate foot pedals, or reach overhead. *Id.* She indicated that Plaintiff could never lift or carry any weight in a work setting. *Id.* Dr. Retondo opined that Plaintiff's pain would inhibit her concentration for more than two thirds of a regular workday, and that Plaintiff would be absent from work more than two days per month. Tr. 528–29.

The ALJ found Dr. Retondo's opinion unpersuasive "because the limitations she assessed are overstated in nearly all areas of functioning, they are inconsistent with the assessment of state agency evaluator, Dr. Davenport, and they are unsupported by the objective medical evidence in the file, particularly PA-C Bates' neurosurgical consultation exam findings, treatment and exam

notes by multiple providers such as NP Kosmetatos and Dr. Retondo herself, repeated radiological imaging of [Plaintiff's] spine, and physical therapy records highlighting [Plaintiff's] poor compliance with her home exercise plan as well as [Plaintiff's] statements regarding her activities of daily living and the pain relief she receives from medication, use of her back brace, and active engagement in physical therapy, all of which show that [Plaintiff's] overall functioning is significantly greater than that alleged here." Tr. 28 (citing Tr. 79, 233–40, 250–57, 526–29, 614, 343, 346, 348–52, 355, 357, 369, 371, 375–80, 384, 403, 406, 408, 411, 414, 417, 420–34, 436, 496, 498, 502, 504, 508–09, 511, 513–19, 521–22, 524, 530–38, 543–45, 549–574, 580, 588–89, 594–95, 600–01, 611).

Plaintiff's arguments regarding the rejection of Dr. Retondo's opinion are misguided. Plaintiff takes issue with the ALJ using Dr. Davenport's opinion to discredit Dr. Retondo's opinion, while also using Dr. Retondo's opinion to discredit Dr. Davenport's opinion. Pl.'s Br. 17. Plaintiff asserts "the ALJ's determination is in conflict with itself because even the ALJ agreed with Dr. Retondo and NP Kosmetatos in that Plaintiff required an RFC that accounted for manipulative deficiencies." Pl.'s Br. 17. Plaintiff argues that despite the ALJ "agreeing with Dr. Retondo and [NP] Kosmetatos regarding the need for manipulative limitations, the ALJ summarily rejected their opinions by improperly citing Dr. Davenport's opposing conclusion" and "the ALJ failed to reconcile this inconsistency in error." *Id.* However, this is not an actual inconsistency given that the ALJ only found Dr. Davenport's opinion "partially persuasive." Tr. 29. Just because the ALJ disagreed with Dr. Davenport and determined postural and manipulative restrictions are warranted, doesn't make his assessment of Dr. Davenport's opinion inconsistent with his assessment of Dr. Retondo's opinion which included much greater restrictions. This is especially evident given that the postural and manipulative restrictions are

just one aspect of the medical opinions so the two medical opinions conflicting in a single regard does not dampen the ALJ's analysis of both opinions.

Plaintiff also asserts that "the ALJ's statements regarding the consistency and supportability factors are belied by the ALJ's own conclusions." Pl.'s Br. 19. Plaintiff argues "the ALJ's decision to find manipulative limitations while rejecting Dr. Davenport is wholly consistent with the conclusions reached by Dr. Retondo and NP Kosmetatos, and also provides support for their opinions." *Id.* Plaintiff asserts that the ALJ failed to explain why the opinion of Dr. Retondo and NP Kosmetatos are not consistent or supported by the record. The Court is not persuaded by Plaintiff's arguments.

Regarding the supportability factor, the ALJ cited Dr. Retondo's own examination indicating that Plaintiff exhibited 5/5 strength in both her upper and lower extremities. Tr. 28 (citing Tr. 436). The ALJ also cited an x-ray of Plaintiff's thoracic spine showing that Plaintiff's "thoracic vertebral body heights are maintained," her "thoracic interspaces are preserved throughout," and that she had "no paraspinal abnormalities." Tr. 496, 502. While the x-ray did show "mild lateral thoracic curves" the general impression was that Plaintiff's "thoracic spine is otherwise normal." *Id.* The ALJ cited an x-ray from March 2022 showing that Plaintiff's cervical spine had "no acute fracture or focal osseous destruction," and that although "there is mild to moderate C3-C6 disc height loss with vertebral endplate spurring," "there is no evidence of malalignment or dynamic instability," and "the prevertebral soft tissues are unremarkable." Tr. 530.

Regarding the consistency factor, the ALJ found the Dr. Retondo's opinion inconsistent with Dr. Davenport's opinion. Tr. 28. As explained above, the ALJ's analysis of these two opinions is not "in conflict with itself," because the ALJ only found Dr. Davenport's opinion

only partially persuasive. The ALJ also found that Dr. Retondo's opinion was inconsistent with Plaintiff's activities of daily living, given that Plaintiff was able to work two days a week as a caregiver, make jewelry, perform household chores, use public transportation, shop in stores, and make beaded artwork. Tr. 25, 28 (citing Tr. 233–40, 250–57). Furthermore, the partial rejection of Dr. Davenport's opinion is not "wholly consistent with the conclusions reached by Dr. Retondo and NP Kosmetatos" as Plaintiff contends. While the ALJ did assign manipulative and postural limitations in Plaintiff's RFC assessment, he didn't go so far as to find Plaintiff as limited as NP Kosmetatos and Dr. Retondo contend.

On this record, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting the opinions of Dr. Retondo and NP Kosmetatos. *Woods*, 32 F.4th at 787.

## III.    RFC

The RFC is the most a person can do in light of her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.*; SSR 96-8p, *available at* 1996 WL 374184. An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a claimant retains the ability to perform past relevant work at step four, or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations that are supported by substantial evidence in the hypothetical posed to a VE. *See id.* at 1163–65. In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163–65.

An ALJ has the responsibility to determine a claimant's RFC. 20 C.F.R. § 416.946(c).

The RFC is used at step four of the sequential analysis to determine if a claimant is able to

perform past relevant work, and at step five to determine if a claimant can adjust to other work

that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a).

Limitations supported by substantial evidence must be incorporated into the RFC and, by

extension, the dispositive hypothetical question posed to the vocational expert

("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court should uphold

step four and five determinations "if the ALJ applied the proper legal standard and his decision is

supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In this case, Plaintiff argues that the ALJ "erred in finding specific limitations that were

not supported by substantial evidence." Pl.'s Br. 3. Specifically, Plaintiff asserts that the ALJ

failed to explain the basis for the RFC findings "which involved key areas of [Plaintiff's]

physical dysfunction that demonstrated disability." *Id.* Plaintiff argues the ALJ reached an

"errant" RFC determination by improperly evaluating Plaintiff's subjective symptom testimony,

the medical opinion evidence, and mischaracterizing medical evidence.

As already discussed earlier in this opinion, the ALJ's RFC assessment properly

considered Plaintiff's subjective symptom testimony and the medical opinion evidence.

Plaintiff also argues that the ALJ failed to follow SSR 96-8p "by fashioning an RFC of

light work with manipulative limitations without explaining how the RFC conclusions were

derived." Pl.'s Br. 3. The ALJ did not err in formulating the RFC, and followed the requirements

of SSR 96-8p. The ALJ discussed in detail Plaintiff's subjective and objective evidence, and

cited to several instances in the record to support their conclusions. The ALJ then properly

translated and incorporated this evidence into an RFC as required by statute. 20 C.F.R. §§

416.913(a), 416.945(a)(3); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ is not required to recite "magic words" or "incantations" in rejecting evidence. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). "A reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id.*; *Towne v. Berryhill*, 717 F. App'x 705, 707 (9th Cir. 2017) (citing *Batson v. Comm'r of the SSA*, 359 F.3d at 1190, 1193 (9th Cir. 2004) (if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld)). An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"). The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Specifically, the ALJ drew a reasonable inference that Plaintiff's activities of daily living, physical therapy records, and examination notes "support the assessment of light-level exertional limitations for [Plaintiff], though these same records also indicate that additional postural and manipulative restrictions are warranted as well as limits to standing, walking, and exposure to certain environmental factors." Tr. 29 (citing Tr. 233–40, 250–57, 343, 346, 348–352, 355, 357, 369, 371, 375–80, 384, 403, 406, 408, 411, 414, 417, 420–434, 436, 496, 498, 502, 504, 508–09, 511, 513–19, 521–22, 524, 526–29, 530–38, 543–45, 549–74, 580, 588–89, 594–95, 600–01, 611, 614). Given Plaintiff's need to change positions to avoid pain, the limitations the ALJ chose were precluding her from walking for more than four hours and sitting for no more than six hours in an eight-hour workday.  Tr. 24. The ALJ also limited her to only occasionally reaching overhead. *Id.*

Plaintiff also argues that the ALJ provided no justifications for tempering the opinions of the non-examining physicians, who found that Plaintiff was capable of light work. Plaintiff also argues that the ALJ failed to explain why Plaintiff was capable of frequent reaching in all directions except occasional overhead reaching. Pl.'s Br. 4 (citing Tr. 24). In the final RFC formulation, the ALJ determined that Plaintiff could perform only light work with an array of postural and manipulative limitations. Tr. 24. Because the state agency physicians concluded that Plaintiff was not disabled, however, and the ALJ formulated a less-inclusive RFC than they would have if they fully credited the State agency physicians' opinions, any error in the ALJ's adjustments of these opinions was harmless.

As the Commissioner contends, the bulk of Plaintiff's argument simply restates previous assignments of error and does not provide an independent basis for review. Def.'s Br. 19 (citing

*Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023). The ALJ did not err in formulating

Plaintiff's RFC.

**CONCLUSION**

For the reasons above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 11th day of July 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge